State *v.* Utter.

---

⁹ THE STATE OF NEW JERSEY, JAMES MILLER, relator, v.
SAMUEL UTTER.

---

The office of Deputy Adjutant General, is such an office or franchise, as is contemplated by the act for rendering the proceedings upon information in the nature of a quo warranto, more speedy and effectual. *Rev. Laws* 206.

The granting of an information, is not now a mere matter of course, but depends upon the sound discretion of the court, according to the particular circumstances of the case, made upon the application for leave to file an information : as where the right, or the fact on which the right depends, is disputed, or where the right turns upon a point of new or doubtful law.

Where the court have granted leave to file an information, the usual course is for the defendant, either to put in a disclaimer, or to plead to the information, by setting out his title to the office; to which plea, the Attorney General may reply, or demur, as in other cases.

---

This was an information in the nature of a quo warranto. It was filed in pursuance of a rule made in this court, while the late Chief Justice Ewing, presided. The information was as follows :

New Jersey Supreme Court of Judicature, of the term of February, in the year of our Lord, one thousand eight hundred and thirty-two.

Essex County, ss. Samuel L. Southard, Attorney General of the State of New Jersey, who prosecutes for the said state, comes here into the Supreme Court of Judicature of the said state, at the city of Trenton, in this same term, in his own person and for the said state, and at the relation of James Miller, relator, desiring to sue and prosecute in this behalf, giveth to the court, here to understand and be informed, that Samuel Utter, late of the township of Newark, in the county of Essex, at the township aforesaid in the county aforesaid, for the space of three months now last past, and more, has unlawfully held and executed, and yet doth unlawfully hold and execute, and claim to have, hold, execute, use and enjoy, the office and franchise of deputy adjutant general of the Essex brigade of militia at Newark, aforesaid ; and also to take upon himself, and exercise the privileges, powers, duties and immunities to the said office belonging and appertaining, which office and franchise aforesaid, the said Samuel Utter, for the whole term afore-

said, upon the state of New Jersey, has usurped, intruded into and unlawfully held and executed at Newark, aforesaid, within the county of Essex and state of New Jersey, and yet doth usurp, intrude into and unlawfully hold and execute, in contempt of the said state and the laws thereof, and against the peace of this state, the government and dignity of the same. Wherefore the attorney general of the state of New Jersey, for the said state, at the relation of James Miller, desiring to sue and prosecute in this behalf, prays the advice of the court here in the premises, and due process of law against the said Samuel Utter, in this behalf, to be made to answer to the said state, whereupon and by what authority and warrant he claims to have, hold, execute, use and enjoy, the office and franchise aforesaid.

To this information, the defendant put in a general demurrer, and to this the attorney general filed a joinder.

*A. Dodd,* for relator.

*E. Vanarsdalen,* jr. for defendant.

The opinion of the court was delivered by

HORNBLOWER, C. J. Upon application made to this court, while the late chief justice presided, a rule was granted, in pursuance of which, the information in this case has been filed. It charges, that Samuel Utter, for the space of three months and more, has unlawfully held and executed, and still doth unlawfully hold and execute, and claim to have, hold, execute, use and enjoy, the office and franchise of deputy adjutant general of the Essex brigade of militia; which office and franchise, the said Samuel Utter, for the whole term aforesaid, upon the state of New Jersey, has usurped, intruded into and unlawfully held, &c. at &c.

To this information, the defendant has put in a general demurrer, to which the attorney general has filed a joinder. The pleadings in this cause, were handed up to the court in the term of May last, and the case submitted without argument.

Upon a conference between the only two judges, then on the bench, (Justice Drake, absent by reason of sickness) it appeared to them that the only question presented for their consideration, was the legal sufficiency of the information, in matter of

State *v.* Utter.

substance; and whether the office of deputy adjutant general, was such an office or franchise, as was contemplated in the statute, relating to proceedings upon information in the nature of a quo warranto; the information appearing to be in due form and in conformity with precedents in the books; and the office in question being a public office, created by statute, the court came to the conclusion that the demurrer must be overruled and judgment of ouster be entered in the cause.

Accordingly, at the May term, an opinion to that effect, was intimated from the bench; but it being then suggested to the court by some gentlemen at the bar, presumed to be more conversant than the members of the court were, with military law and etiquette, that a deputy adjutant general was a member of the general staff, and belonged, in military phrase, to " the family " of the commander in chief; and as such, was removeable at his will and pleasure; the court concluded to take time, and look more deliberately into the case. I have done so, and find myself, in the result, obliged to reiterate my former opinion.

The granting of an information is not now a mere matter of course, (*Rex* v. *Stacey*, 1 *T. R.* 2) but depends upon the sound discretion of the court, according to the particular circumstances of the case, made upon the application for leave to file an information; as where the right or the fact on which the right depends, is disputed; or where the right turns upon a point of new or doubtful law. 3 *Bac. abr.* 644, *tit. Information*; *Rex* v. *Carter*, *Cowp. R.* 58. Whether this was a proper case for an information, must therefore have undergone in some measure, at least, the consideration of the court upon the argument of the rule to shew cause; and by making the rule absolute, the court indicated an opinion that an information in the nature of a quo warranto, would lie, to enquire upon what authority a person executed the office of deputy adjutant general.

The effect of the general demurrer in this case, is to raise the same preliminary question for the consideration of the court a second time. It is, I apprehend, rather an unusual course, after leave has been given to file an information, (which the court would not have granted, if they had not been of opinion, that the facts, if true, presented a proper case for such a proceeding) to file a general demurrer to the information; and thus

present the same question to the court, which has been previously discussed. The usual course is, for the defendant either to put in a disclaimer, or to plead to the information by setting out his title to the office. 5 *Jac. Law Dict.* 374, *tit. Quo Warranto.* To which plea, the attorney general might reply or demur, as in other cases.

The *stat. of* 9 *Anne, cap.* 20, extends only to individuals usurping offices or franchises in or under a corporation. *Bul. N. P.* 212. In other cases, the information was filed by the attorney general, in behalf of the crown. 3 *Bac. abr.* 644; *1 Bl. R.* 187. But our statute, (*Rev. Laws* 206) although substantially a copy of 9 *Ann, cap.* 20, is more extensive. Its language is, " That in case any person or persons shall usurp, intrude into, or unlawfully hold or execute *any office or franchise within this state,* it shall and may be lawful, &c. The information charges, that the defendant has usurped and intruded himself into the office of deputy adjutant general of the Essex brigade of militia. The demurrer admits the truth of this charge; and perhaps too, I might safely add, it admits that there is such an office in this state. But whether it does or not, the fact is so ; there is such an office, and the court are bound to recognize its existence. By the third section of the militia law, *Rev. Laws* 576, after providing that the then existing officers, should continue to hold and execute their several commissions, enacts, " that vacancies by death, removal, resignation or otherwise, shall be filled up so that the militia shall be *officered* as follows." The act then proceeds to enumerate and classify the officers, and to prescribe the manner of their appointment ; and among those to be appointed by the commander in chief, is an adjutant general, with the rank of brigadier general, " and whenever he" (the commander in chief) may consider that the service shall require it," (among others) " one deputy adjutant general, to each brigade or division, as he may judge expedient; " and the act gives such officer, when appointed, the rank of lieutenant colonel. There is then such an office known in the law. It is a public office; it concerns the public, and it is a valuable, as well as an honorable office.

The question now under consideration, cannot depend on the fact, whether the commander in chief has ever considered it ex-

State *v.* Utter.

pedient, to make such an appointment or not. Nor whether, if he has, there is an actual and lawful incumbent or not; nor does it depend upon the tenure by which the office is held; whether he is removable at the will and pleasure of the commander in chief, or subject only to the military ordeal of a court martial. A lawful but vacant office, may be usurped and intruded into, as well as an office already filled by a lawful incumbent; and whether the lawful incumbent may be removed by the *ipse dixit* of the commander in chief, or can only be ousted by impeachment, or by the judgment of a court martial, is perfectly immaterial; he is still the lawful incumbent until lawfully removed. If then the defendant exercises the office of deputy adjutant general, as the information charges, and as the demurrer admits, he is an intruder, unless he has been lawfully appointed. If he was so, he ought to have pleaded it. If it is contended, that the officer in question, is " *a member of the family* " of the commander in chief, and that he has a right to dispense with his services and strip him of his honors whenever he pleases, and that in the lawful exercise of this prerogative, the commander in chief had removed Colonel Miller, the relator, and appointed the defendant in his place, that matter ought to have been pleaded. The attorney general then might have taken issue on the facts, or by demurrer to such plea, have drawn in question the right and power of the commander in chief to make such summary removal. I do not know what the military rule and etiquette upon this subject is. It may be, as it was suggested to the court, that the members of the general staff, are of the household of the commander in chief, and removable at his will. But if so, I should suppose, when the commander in chief went out of office, his family would go with him. If they are merely attached to his official person, that connection must cease the moment the sceptre departs from him; yet such I understand is not the fact. Although it is a little unusual to enquire into facts, when settling a demurrer, I have, for my own satisfaction, made some enquiry into facts which might have been publicly investigated on a proper issue; and if I am correctly informed, the officers of the general staff are commissioned under the great seal of the state, as well as the field officers and those of the regimental staff. Such was the case as

respects the relator. He was commissioned under the great seal on the fourth of May, 1829, as deputy adjutant general of the Essex brigade of militia, with the rank of lieutenant colonel; and all officers and soldiers, are thereby directed to obey and respect him. The respectable gentlemen now holding the offices of quarter master general and adjutant general, and who rank as brigadier generals, were commissioned in like manner and have continued to hold and exercise their offices under every change that has taken place in the office of commander in chief, since their first appointments. I mention this only to shew, that the officers of the general staff, do not die officially upon the demise or going out of office of the commander in chief by whom they were appointed. Nor yet, to prove that a new commander in chief may not supercede their appointments and make a new selection to compose his own "military family;" but only to shew, that if he has that power, and did exercise it in the case of the relator and the defendant, it ought to have been shewn to the court by a proper plea. We cannot travel out of this record, to enquire what has been done in this case by the appointing power.

I have not been able to lay my hand upon a case in this state, in which the right to a military office has been made the subject of an information. Perhaps the absence of such cases may be accounted for, from the fact that such officers are of too little value or importance in New Jersey, to induce an usurpation of them, or if usurped, not considered worth recovering at the expense of a law suit. But as there in such an office, created by and known in the law, in this state, as it is a public office and concerns the public, as it is in legal contemplation, a valuable office, and in time of actual service, may become really so; as the information charges the defendant with having usurped it, and as he by his demurrer admits he has done so; and upon looking into the cases in which informations have been held to lie against individuals, (see a collection of cases in 4 *Cowan* 100, *note a.*) I am of opinion that judgment must be given for the state.

Let the demurrer be overruled, and judgment of ouster entered, with costs. There has been nothing done by the defendant

in this case, that would justify or induce the court to impose a fine.

FORD, J. concurred.

DRAKE, J. delivered no opinion, being absent by reason of sickness.

Demurrer overruled, and judgment of ouster with costs.

CITED in *State* v. *Paterson & Hamburg Turnpike Co.*, 1 *Zab.* 12 ; *State v. Tolan,* 4 *Vr.* 198.